**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSE BOLIVAR PASTUIZACA, *on behalf of himself,* *FLSA Collective Plaintiffs, and the Class,*<br><br>                         Plaintiff,<br><br>          v.<br><br>MONONOKE INC., <br>          d/b/a BERON BERON, <br>HINOMARU INC. <br>          d/b/a KENKA, <br>PANYA ONGKEO, and <br>YUJI UMEKI,<br><br>                         Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

        Plaintiff JOSE BOLIVAR PASTUIZACA ("Plaintiff"), on behalf of himself and others

similarly situated, hereby files this Class and Collective Action Complaint against Defendants

MONONOKE INC. d/b/a BERON BERON, HINOMARU INC. d/b/a KENKA (the "Corporate

Defendants"), PANYA ONGKEO and YUJI UMEKI (the "Individual Defendants", and

collectively with the Corporate Defendants, the "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime wages, due to improper rounding, (3) unreimbursed costs for uniforms, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime wages, due to improper rounding, (3) unpaid spread of hours premiums, (4) compensation for late payment of wages, (5) unreimbursed costs for uniforms, (6) denial of sick leave, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

3.      Plaintiff further alleges that Defendants violated the New York State Earned Safe and Sick Time Act ("ESSTA"), when they refused to allow Plaintiff any sick or safe leave, in spite of his requests. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

4.      Plaintiff further alleges that pursuant to Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

5.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also allege that, in retaining

those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

8.      At all relevant times, Plaintiff JOSE BOLIVAR PASTUIZACA was a resident of Queens County, New York.

9.      Corporate Defendant MONONOKE INC. is a domestic business corporation duly organized under the laws of the State of New York with a principal place of business located at 164 1st Avenue, New York, NY, 10009 and address for service of process at 69-60 108th Street Apartment 112, Forest Hills, NY, 11375.

10.     Corporate Defendant HINOMARU INC. is a domestic business corporation duly organized under the laws of the State of New York with a principal place of business located at 25 St. Marks Place, New York, NY, 10003 and an address for service of process at 69-60 108th Street Apartment 112, Forest Hills, NY, 11375.

11.     Individual Defendant PANYA ONGKEO is the co-owner, principal, and executive officer of Corporate Defendants. Defendant PANYA ONGKEO exercised functional control over the business and financial operations of Corporate Defendants and over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and Class Members. With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendant PANYA

ONGKEO exercised his power to (and also delegated to managers and supervisors the power to) (i) fire and hire; (ii) determine rate and method of pay; (iii) supervise and control employee work schedules or conditions of employment; (iv) maintain employment records; and (v) otherwise affect the quality of employment. Defendant PANYA ONGKEO had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members.

12.    Individual Defendant YUJI UMEKI is a co-owner, principal, and manager of Corporate Defendants. Defendant YUJI UMEKI exercised functional control over the business and financial operations of Corporate Defendants and over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and Class Members. With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendant YUJI UMEKI exercised his power to (and also delegated to managers and supervisors the power to) (i) fire and hire; (ii) determine rate and method of pay; (iii) supervise and control employee work schedules or conditions of employment; (iv) maintain employment records; and (v) otherwise affect the quality of employment. Defendant YUJI UMEKI had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members.

13.    Defendants collectively own and operate a two (2) restaurant enterprise which operates at the following two locations:

    a.  164 1st Avenue, New York, NY, 10009 ("Beron Beron"); and

    b.  25 St. Marks Place, New York, NY, 10003 ("Kenka")

       (together the "Restaurants").

14.     The Restaurants are operated as a single integrated enterprise. The Restaurants engage in related activities and share common ownership and businesses purposes:

a.  Individual Defendant PANYA ONGKEO is listed as the principal on the liquor license for both of the Restaurants. *See* **Exhibit A**;

b.  Both Restaurants share the same address for service of process, which is also the address of Individual Defendant PANYA ONGKEO. *See* **Exhibit B**;

c.  The Restaurants share common ownership and management. The Restaurants are both owned and managed by Individual Defendants PANYA ONGKEO and YUJI UMEKI. Multiple articles and documents identify their shared ownership and management. *See:*

i.  **Exhibit C** – Articles by Bedford + Bowery ("As anticipated, Panya Ongkeo and Yuji Umeki of Kenka opened Beronberon in the East Village last night, and it was packed with customers of its longstanding predecessor Sapporo East") ("owner Panya Ongkeo" "Yuji Umeki (of nearby Saint Marks Japanese fun zone, Kenka) is also co-owner of Beronberon") ("Panya Ongkeo, owner of Kenka on St. Marks Place, is readying Beronberon");

ii.  **Exhibit D** – Article by EV Grieve ("the Japanese restaurant, [Beron Beron] whose management team includes Yuji Umeki, a manager at nearby Kenka").

d.  The Restaurants share a common theme: a stylized Japanese Izakaya focusing on cheap beer, pan-Japanese street food, and a casual atmosphere.

15.     Individual Defendant PANYA ONGKEO can exert similar control to Plaintiff and other similarly situated employees.

16.     This Court has personal jurisdiction over Defendants in that they are incorporated in the state of New York or operate their headquarters from the State of New York.

17.     Each Corporate Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the Defendants are thus employers subject to the jurisdiction of the FLSA.

18.     At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged. . . in the production of goods for commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

19.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

20.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTION ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to cooks, line cooks, dish washers, food preparers, hostesses, waiters, bussers, cashiers, porters, bartenders, barbacks and food runners, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.     At all and relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated have had substantial job requirements and pay provisions, and have been

subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules all culminating in a willful failure and refusal to pay: (1) proper wages, including overtime, due to improper timeshaving, (2) proper wages, including overtime, due to rounding, and (3) unreimbursed costs for uniforms.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24.     Plaintiff brings claim for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to cooks, line cooks, dish washers, food preparers, hostesses, waiters, bussers, cashiers, porters, bartenders, barbacks, and food runners, among others, employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

25.     All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The member and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.     The proposed Class is so numerous that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty members of the Class.

27.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages for all hours worked, due to timeshaving, (ii) failing to pay wages for all hours worked due to improper rounding, (iii) failing to reimburse Plaintiff and Class Members for uniform costs, (iv) failing to provide proper paid sick leave; (v) failing to provide wage and hour notices, at date of hiring, per requirements of the NYLL, and (vi) failing to provide proper wage statements per requirements of the NYLL.

28.     Defendants' policies and practices affected all Class Members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

29.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in employment law cases, including wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members are to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues to this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

e.    Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL and the ESSTA;

f.    What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members;

g.    What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the accrual, pay, and use of sick leave for Plaintiff and Class Members;

h.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

i.    Whether Defendants properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

j.    Whether Defendants paid Plaintiff and Class Members proper wages for all hours worked, including overtime hours;

k.    Whether Defendants paid Plaintiff and Class Members their owed spread of hours premiums;

l.    Whether Defendants timely compensated Plaintiff and Class Members properly under the NYLL;

m.    Whether Defendants accurately tracked the number of hours Plaintiff and Class Members earned for sick leave under the ESSTA;

n.  Whether Defendants paid Plaintiff and Class Members for the costs of acquiring and maintaining their uniforms;

o.  Whether Defendants paid Plaintiff and Class Members for their safe and sick leave, per the requirements of the NYLL;

p.  Whether Defendants provided wage and hour notices to Plaintiff and Class Members, at the date of hiring and annually, per requirements of the NYLL; and

q.  Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL.

## STATEMENT OF FACTS

**Wage and Hour Violation Claims:**

33.    In and around 1991, Plaintiff was hired by Defendants to work as a cook at Defendants' Beron Beron restaurant. Plaintiff was terminated in July 2024 due to an overwhelming workload beyond the scope of Plaintiff's duties, resulting from Defendants' short staffing.

34.    From the start of his employment to around July 2024, Plaintiff was scheduled to work Tuesday through Thursday from 12:30 PM until 10:30 PM, and Friday and Saturday from 12:30 PM until 11:30 PM for a total of fifty-two (52) hours per week. From July 2024 to the end of his employment, for about two weeks, Plaintiff was scheduled to work from Tuesday through Saturday from 4:30 PM until 12:30 AM each day for a total of forty (40) hours per week.

35.    From the start of his employment to January 2023, Plaintiff was always paid at the minimum wage. From January 2023 to March 2024, Plaintiff was paid sixteen dollars and fifty cents ($16.50) an hour. And from March 2024 until his termination, Plaintiff was paid at seventeen dollars and fifty cents ($17.50) an hour.

36.    Plaintiff always clocked in and out throughout the entire duration of his employment with Defendants. Plaintiff was required to show up ten (10) to fifteen (15) minutes early for each shift in order to set up and prepare for work. However, Plaintiff was not allowed to clock in until the start time of his scheduled shift. Plaintiff was also consistently asked to stay ten (10) to fifteen (15) minutes each day after he clocked out to help with small tasks like cleaning his cooking station and taking out garbage. As a result, Plaintiff was timeshaved twenty to thirty minutes per day, totaling one hour and forty minutes to two and a half hours every week. FLSA Collective Plaintiffs and Class Members were also asked to arrive early and stay late to work off-the-clock.

37.    Additionally, despite having Plaintiff's actual punch records, Defendants had a policy of rounding Plaintiff's hours to the quarter-hour, always to Plaintiff's detriment. FLSA Collective Plaintiff and Class Members had their hours similarly rounded in favor of Defendants.

38.    Plaintiff was never paid spread of hours premiums. Plaintiff would routinely work shifts of ten hours or more (especially when accounting for the systematic timeshaving) but he was never paid the proper spread of hours premiums for shifts lasting longer than ten hours as provided for in NYLL §146-1.6. Class Members were similarly not compensated the proper spread of hours premiums for shifts lasting longer than ten hours.

39.    At all relevant times, Plaintiff and Class Members were improperly compensated by Defendants at a bi-weekly frequency, in violation of the NYLL.

40.    Throughout their employments, Defendants regularly failed to pay Plaintiff and Class Members their wages within seven (7) days of the end of the week in which they earned them, in violation of NYLL § 191(1)(a)(i). *See also Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1145-46 (App. Div. 1st Dept. 2019). Defendants would provide Plaintiff and

Class Members their wages on a biweekly basis despite the NYLL requiring employees like Plaintiff and Class Members be compensated on a weekly basis.  Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payments of wages and accrued interests on the delayed payments.

41.    Under New York Labor Law, all "manual worker(s)" must be paid on a weekly basis.  Pursuant to the New York State Department of Labor, "manual worker" includes non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor.  Here, Plaintiff and Class Members spent most of their day engaged in physical labor. Plaintiff and Class Members engaged in the following physical duties every day: (i) cooking and preparing food, (ii) washing and drying dishware and glassware, (iii) sweeping and mopping the restaurant, (iv) disposing trash, (v) bussing tables, and (vi) lifting heavy boxes, among others.

42.    Further, manual workers generally include those employees, like Plaintiff and Class Members, whose labor is easily interchangeable with other able-bodied individuals.  As workers earning only slightly above minimum wage, the jobs market itself demonstrates the interchangeability of Class Members.  NYLL §191 was passed to protect individuals in the types of low-wage, interchangeable jobs occupied by Plaintiffs and the Class.  Plaintiff and the Class held positions with Defendants which are easily trained and may be easily replaced by other able-bodied workers. The ease of replacement and low-wages of Plaintiff and the Class make them dependent upon their weekly earnings.  This dependance and lack of job security places Plaintiff and the Class directly in the category of workers that NYLL intended to protect by ensuring they receive their wages on a weekly basis.

43.     That Plaintiff and the Class Members were engaged in easily trained, easily replaceable positions are clearly demonstrated by their earnings. Throughout his employments, Plaintiff earned New York State minimum wage, with a small raise to $16.50 and later $17.50 during the final year. These rates were significantly lower than the average individual employed in New York State as a waiter or waitress.[1]  Employees in those positions in New York State earned over $24.54 per hour on average.  The job market itself demonstrates that Plaintiff, working in New York City for $15.00 to $17.50 per hour, was not employed in highly skilled positions. Given the low wages of Plaintiff and the Class and realities of their daily work, Plaintiff and Class Members must be afforded the protections provided under NYLL §191.

44.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members, who were manual workers, until at least two (2) days after their legally mandated pay date, in violation of the NYLL.

45.     Further, upon hiring, Plaintiff was informed that he was required to wear a black, unadorned apron while at work. Plaintiff was required to purchase and care for at his own expense during the last year of his employment with Defendants. Plaintiff had to wash his uniform each week and needed to replace it twice. Plaintiff was never compensated for any of the expenses related to acquiring or caring for his uniform. FLSA Collective Plaintiffs and Class Members were also required to obtain and wear specific uniforms and were not compensated for those costs.

**Fraudulent Filing Violation Claims:**

46.     At all relevant times, Defendants had a policy of paying Plaintiff and Class Members partly in cash and not issuing correct statements with regards to proper federal tax deductions. Defendants had a policy of paying a fix amount of salary by check, but the rest would

---

[1] https://www.bls.gov/oes/current/oes353031.htm#st

be paid out as cash and would not be reflected on Plaintiff's tax returns. For example, Defendants would pay Plaintiff six hundred and forty dollars ($640) by check and the remaining in cash. As a result, Defendants failed to issue accurate W-2 forms to Plaintiff and Class Members as required by federal law.

47.    Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members. In failing to account for these monies in their IRS filings, Defendants failed to file proper W-2s in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for statutory penalties for each Class Member for each fraudulent filing, which would have to be at least once a year.

48.    In violating the Internal Revenue Code by failing to provide proper W-2 Forms. Defendants also breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

49.    Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

50.    As a result, Plaintiff and Class Members will either (1) be liable to the IRS for employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

51.    The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of the difference between all their actual earnings from Defendants and actual amounts reported by Defendants beginning six (6) years prior to the filing of this Complaint.

52. Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

**WTPA Violation Claims:**

48. At no time during the relevant periods did Defendants provide Plaintiff or Class Members with proper wage notices, either at the beginning of employment or annually thereafter, as required by NYLL.

49. Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

50. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated its business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

51. Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours actually worked") (emphasis added).

52.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

53.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide proper wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

54.    Had the wage statements Defendants provided to Plaintiff and Class Members

accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

55.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

56.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

57.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills, 2021 Minn*. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[2]

---

[2] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that

58.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.,* 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

59.     "In the wake of the Supreme Court's decision in TransUnion, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.,* 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

---

assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

60.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

61.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

62.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in

employees' wage statements. That is why "[p]laintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

63.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

64.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

65.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants did report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect

to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

66.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL.

67.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL.

**<u>Sick Leave Violation Claims:</u>**

68.     During Plaintiff's employment, Defendants engaged in adverse action against Plaintiff and Class Members, by refusing to pay for earned sick time that was taken off, in violation of the NYLL and the ESSTA.

69.     At no time during Plaintiff's employment was he paid for sick leave. The NYLL and the ESSTA both contain provisions mandating the accrual and right to use *paid* sick leave. This leave accrues based on the number of hours worked and must be provided to employees to use for issues of illness or for the care of immediate family members.

70.     At all points, Defendants had a policy of not paying for employees' sick leave. While Defendants would allow Plaintiff to take sick days, they refused to pay him for days on which he did not work due to illness or another covered reason. Class Members were similarly denied pay for sick days.

71.     While both the NYLL and the ESSTA contain provisions allowing for employers to refuse to pay for sick leave if the employer also provides paid time off ("PTO") to employees in an amount greater than or equal to the amount of sick leave mandated by each law, such provisions require that an employee has either: (1) already used all of his or her allotted or earned

PTO, or (2) elected not to use their PTO in a specific instance so as to use it for another purpose in the future. In this case, such an argument is moot as Defendants did not provide any of their employees with any form of PTO. Therefore, there is no situation in which Defendants could deny Plaintiff or Class Members payment for the legal use of their accrued sick leave.

72.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

### (brought individually and on behalf of FLSA Collective Plaintiffs)

73.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

74.     At all relevant times, Defendants were and continue to be employers engaged in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

76.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

77.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime wages, for all hours worked to Plaintiff and FLSA Collective Plaintiffs due to a practice of timeshaving, in violation of the FLSA.

78.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime, for all hours worked to Plaintiff and FLSA Collective Plaintiffs due to a practice of improper rounding.

79.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff and FLSA Collective Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

80.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

81.     At all relevant times, Defendants had a policy and practice of not compensating Plaintiff and FLSA Collective Plaintiffs their proper expenses with regards to their uniforms.

82.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

83.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs is entitled to liquidated (*i.e.,* double) damages pursuant to the FLSA.

84.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, plus an equal amount as liquidated damages.

85.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

<u>**COUNT II**</u>

<u>**VIOLATION OF THE NEW YORK LABOR LAW**</u>

<u>**(brought individually and on behalf of the Class)**</u>

86.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

87.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

88.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members proper wages, including overtime wages, due to timeshaving, in violation of the NYLL.

89.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members proper wages, including overtime wages, due to improper rounding, in violation of the NYLL.

90.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts worked in excess of ten (10) hours, in violation of the NYLL.

91.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

92.     Defendants knowingly and willfully failed to reimburse Plaintiff and Class Members the cost of purchasing their uniforms.

93.      Defendants knowingly and willfully failed to pay Plaintiff and Class Members their proper wages when they took sick leave.

94.      Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL.

95.      Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the NYLL.

96.      Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, due to timeshaving, unpaid wages, due to improper rounding, unpaid spread of hours premiums, reimbursement for the cost of uniforms, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## INTERFERENCE UNDER THE EARNED SICK AND SAFE TIME ACT

### (brought individually and on behalf of the Class)

97.      Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

98.      Defendants knowingly and willfully failed to provide Plaintiff with proper sick leave as required under the ESSTA.

99.      Defendants are employers covered by ESSTA's sick leave provision as an "employer[s] that employ[s] five or more employees … shall provide paid safe/sick time to their employees in accordance with the provisions of this chapter." NYC Admin. Code §20-913 *et seq.*

100.     The Earned Safe and Sick Time Act provides:

> An employee shall be entitled to use sick time for absence from
> work due to:

(a)      such employee's mental or physical illness, injury or health condition or need for medical diagnosis, care or treatment of a mental or physical illness, injury or health condition or need for preventive medical care; or

(b)   care of a family member who needs medical diagnosis, care or treatment of a mental or physical illness, injury or health condition or who needs preventive medical care; or

(c)  closure of such employee's place of business by order of a public official due to a public health emergency or such employee's need to care for a child whose school or childcare provider has been closed by order of a public official due to a public health

NYC Admin Code §20-914(a).

101.    Defendants violated the rights of Plaintiff and Class Members when they denied them the usage of their sick time for any legitimate reason. Due to Defendants' NYLL and ESSTA violations, Plaintiff and Class Members are entitled to recover from Defendants punitive damages, compensatory damages, and costs and disbursements of this action.

## COUNT IV

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS

## UNDER 26 U.S.C. § 7434(a)

### (brought individually and on behalf of the Class)

102.    Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein:

103.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other persons, such person may bring a civil action for damages against the persons so filing such returns." 26 U.S.C. § 7434(a).

104.    By purposely failing to provide Plaintiff and Class Members with accurate IRS Forms W-2s for all of the tax years during which they were employed by Defendants and failing

to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

105.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT V

## BREACH OF CONTRACT

### (brought individually and on behalf of the Class)

106.    Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

107.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance . . . This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . [T]he duties of good faith and fair dealing . . . encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *311 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

108.    When Plaintiff and Class Members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable

laws. This involved, *inter alia*, a duty to abide by the Internal Revenue Code and pay all required FICA taxes.

109.    Defendants breached this duty when they decided to pay Plaintiff and Class Members partly in cash without withholdings or deductions, and not file accurate W-2 forms. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf, but did not.

**COUNT VI**

**UNJUST ENRICHMENT**

**(brought individually and on behalf of the Class)**

110.    Plaintiff realleged and incorporate all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

111.    To state a claim for unjust enrichment, a plaintiff must allege that "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder,* 19 N.Y.3d 511, 516, 973 N.E.2d 743, 950 N.Y.S. 2d 333 (2012) (internal quotations omitted).

112.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such Came at the expense of Plaintiff and Class Members because they will either: (1) be liable to the IRS for the employer's share, or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

113.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL and the ESSTA;

b.    A declaratory judgment that the practices complained herein are unlawful under 26 U.S.C. § 7414 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of Plaintiff and Class Members;

c.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.    An award of unpaid wages, due to timeshaving, due under the FLSA and the NYLL;

e.    An award of unpaid wages, due to improper rounding, due under the FLSA and the NYLL;

f.    An award of unpaid compensation, due to late payment of wages, due under the NYLL;

g.    An award of unreimbursed uniform costs, due under the NYLL;

h.    An award of unpaid spread of hours premiums, due under the NYLL;

i.    An award of statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434 for each violation;

j.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

k.  Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

l.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

m.  An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA and the NYLL;

n.  All applicable compensatory and punitive damages under the ESSTA;

o.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

p.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

q.  Designation of the action as a class action pursuant to F.R.C.P 23;

r.  Designation of Plaintiff as Representative of the Class;

s.  Designation of Plaintiff's Counsel as Class Counsel; and

t.  Such other relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: March 13, 2025                   Respectfully submitted,

                                        **LEE LITIGATION GROUP, PLLC**

                              By:   _/s/ C.K. Lee_
                                        C.K. Lee, Esq. (CL 4086)
                                        Anne Seelig (AS 3976)
                                        148 West 24th Street, 8th Floor
                                        New York, NY 10011
                                        Tel.: (212) 465-1180
                                        Fax: (212) 465-1181
                                        *Attorneys for Plaintiff,*
                                        *FLSA Collective Plaintiffs,*
                                        *and the Class*